2002-NMCA-051

46 P.3d 102

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jewel GRIFFIN, Defendant–Appellant.**

No. 21,958.

Court of Appeals of New Mexico.

March 19, 2002.

Certiorari Denied, No. 27,463,
May 1, 2002.

■■■■■■■■

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

FRY, Judge.

{1} Defendant Jewel Griffin appeals her conviction for aggravated battery with a deadly weapon. She argues that the trial court did not properly instruct the jury with regard to her self-defense claim. We agree with Defendant, and therefore reverse and remand for a new trial with proper jury instructions.

## FACTS

{2} Defendant and Billy Clayton (Victim), attended a small gathering at a private residence where everyone present began drinking in the early afternoon. All of the people at the gathering were either related or had known each other for a long time. In the early evening, Defendant became involved in a verbal altercation with Melissa Campos. The two women were kept from coming to blows by the intervention of the other people present. At some point after this altercation, Defendant armed herself with a kitchen knife. She later testified that she had felt she needed to arm herself against Campos because Campos was known to "pack a gun" and "to try to sneak up and get you from behind," and because a man who was present at the party was known to have intervened on Campos' behalf and had "jumped" one of Defendant's friends only a week earlier.

{3} At approximately nine o'clock in the evening, Defendant and one or more of the other guests were in a back room of the house having a drink and talking about styling Victim's hair. The argument between Defendant and Campos rekindled and Victim intervened. Defendant and Victim began to fight. The fighting was initially verbal, but then it escalated to slapping, pushing, closed-fist blows, and hair pulling. Defendant and Victim ended up on their knees in a mutual headlock. At this point, Defendant stabbed Victim using the kitchen knife with which she had previously armed herself. The blade of the knife went downward into Victim's neck and broke off from the handle. Initially, neither Defendant nor Victim knew he had been stabbed, and they continued fighting. Once the injury became evident, the other people present broke up the fight.

## PROCEDURAL HISTORY

{4} At trial, defense counsel requested a number of jury instructions relating to Defendant's self-defense claim. The following instructions relevant to Defendant's appeal were given to the jury:

### INSTRUCTION NO. 3

For you to find the defendant guilty of Aggravated Battery With a Deadly Weapon, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant touched or applied force to Billy Clayton by stabbing him in the neck with an instrument or object which, when used as a weapon, could cause death or very serious injury;

2. The defendant intended to injure Billy Clayton; and

3. This happened in New Mexico on or about the 18th day of December, 1999.

### JURY INSTRUCTION NO. 3–A

In addition to the other elements of aggravated battery, the state must prove beyond a reasonable doubt that the act was unlawful.

For the act to have been unlawful it must have been done with the intent to intrude upon the bodily integrity or personal safety of the victim.

### JURY INSTRUCTION NO. 5

Evidence has been presented that the defendant acted in self defense. The defendant acted in self defense if:

1. There as an appearance of immediate danger of death or great bodily harm to the defendant as a result of Billy Clayton pushing and striking defendant;

2. The defendant was in fact put in fear of immediate death or great bodily harm and she struck Billy Clayton with a knife because of that fear; and

3. The apparent danger would have caused a reasonable person in the same circumstances to act as the defendant did.

The burden is on the state to prove beyond a reasonable doubt that defendant did not act in self defense. If you have a reasonable doubt as to whether the Defendant acted in self defense, you must find her not guilty.

The trial court refused the following instruction requested by Defendant:

JURY INSTRUCTION NO. _____

For you to find the defendant guilty of aggravated battery with a deadly weapon as charged in the Criminal Information, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant touched or applied force to Billy Clayton by striking him with a knife; The defendant intended to injure Billy Clayton;

2. This happened in New Mexico on or about the 18th day of December, 1999.

3. The defendant did not act in self defense.

The trial court accepted all of Defendant's requested instructions except this one. Unlike the court's elements instruction, Defendant's requested instruction required the State to prove as an element of the crime that Defendant did not act in self-defense. After trial, Defendant filed a motion for a new trial, arguing, among other things, that the trial court erred by refusing this instruction. The trial court denied the motion.

## DISCUSSION

### Preservation

■ {5} The State argues that Defendant did not preserve her argument regarding the defective jury instructions, and in fact invited any error that she claims occurred. The State contends that Defendant submitted redundant instructions, and in order to preserve error, Defendant should have argued for omission of Instruction 3–A regarding unlawfulness *and* for inclusion of paragraph 4 of Defendant's requested elements instruction. We disagree. The requirements of preservation are not so technical. The purpose of the preservation requirement is twofold: "(1) that the trial court be alerted to the error so that it is given an opportunity to correct the mistake, and (2) that the opposing party be given a fair opportunity to meet the objection." *Harbison v. Johnston,* 2001–NMCA–051, ¶ 7, 130 N.M. 595, 28 P.3d 1136 (citations and internal quotation marks omitted).

■ {6} The trial court clearly understood what Defendant was arguing. Defendant requested an elements instruction that included as an element the requirement that "[t]he defendant did not act in self defense." Defendant informed the trial court that the UJIs require both this addition to the elements instruction and a separate instruction defining self-defense in all cases where a party raises self-defense as an issue. The court made a well-informed ruling on this question and the State had ample opportunity to respond to Defendant's arguments.

> Judge: I think that she is entitled to a self-defense instruction, with the jury to rule on the weight to be given, if any. So I'm going to give the instructions tendered by the defense, except for the 14–322, given, as modified. Because I believe it is covered by other instructions tendered.
>
> . . . .
>
> Defense: The Defendant is going to object to the proposed instructions of the court, in that the court has elected to not submit the Defendant's requested elements instruction under 14–322. It is my understanding the court has denied my right, or my request, to add element

number four, which says that the Defendant did not act in self-defense. I think that that is the burden of proof which is a part of the elements of the offense which the State has to prove, and that is required by the UJI, the uniform jury instruction, and were taking into consideration from [UJI 14–]322 and [UJI 14–]5183, that is the self-defense instruction.

Judge: I did not reach that same conclusion. I am noting on your copy, for the court file, but not for submission to the jury, that that instruction has been refused. And I believe that the information you are requesting to go to the jury, [goes] to the jury through other instructions. And your record is complete then.

{7} The State opposed all of Defendant's requested jury instructions, arguing first that there was insufficient evidence to support Defendant's claim of self-defense and second that even if there were sufficient evidence to support a self-defense instruction, the fourth paragraph of Defendant's tendered elements instruction should not be given because it was redundant.

Prosecution: If the court is inclined to give the self-defense instruction, I would submit that adding it as number four to the elements instruction is not necessary, especially in light of the other instructions that the Defendant wants to give ... [T]he jury will be adequately instructed elsewhere on self-defense.

Based on the foregoing evidence, we hold that Defendant's argument was preserved and Defendant did not invite error in the jury instructions.

## Jury Instructions

■ {8} "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001–NMSC–033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citations omitted). Because Defendant's argument was preserved, we do not limit our review to fundamental error as the

State requests. We review the jury instructions to determine whether a reasonable juror would have been confused or misdirected by the instructions. *State v. Parish*, 118 N.M. 39, 42, 878 P.2d 988, 991 (1994). *Parish* holds that "an erroneous instruction cannot be cured by a subsequent correct one," and "instructions must be considered as a whole, and not singly." *Id.* at 41, 878 P.2d at 990 (citations and internal quotation marks omitted). "[I]f an instruction is facially erroneous it presents an incurable problem and mandates reversal." *Id.* It is reversible error if "a reasonable juror might have" misunderstood a jury instruction. *Id.* at 42, 878 P.2d at 991 (citations and internal quotation marks omitted).

■ {9} The State argues as a threshold matter that there was insufficient evidence to warrant any self-defense instruction because there was no evidence that Defendant was threatened with death or great bodily harm, as required by the jury instruction on self-defense. The trial court felt otherwise, as evidenced by the fact that it did give the self-defense instruction. The State admits Defendant testified that Victim grabbed her hair and pummeled her about the face and head. This is sufficient evidence of threatened great bodily harm to warrant an instruction on the issue of self-defense. *See id.* (holding that a self-defense instruction is warranted when the facts are "sufficient to raise a reasonable doubt in the minds of the jury as to whether or not the defendant acted in self-defense") (citation and internal quotation marks omitted); *cf. State v. Brown*, 1996–NMSC–073, ¶ 34, 122 N.M. 724, 931 P.2d 69 ("When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error."). It was for the jury to decide the degree of danger to which Defendant was actually subjected.

{10} We now turn to the propriety of the trial court's instructions. The use note for the jury instruction for "Self defense; deadly force by defendant" instructs as follows:

1. For use in nonhomicide cases when the self defense theory is based upon: necessary defense of self against any unlawful action; reasonable grounds to believe a

design exists to commit a felony; or reasonable grounds to believe a design exists to do some great bodily harm. *If this instruction is given, add to the essential elements instruction for the offense charged, "The defendant did not act in self defense".*

UJI 14–5183 NMRA 2002, Use Note 1 (emphasis added). The trial court did not comply with the emphasized portion of this use instruction. Courts are required to give the uniform jury instruction as written. UJI General Use Note NMRA 2002 ("[W]hen a uniform instruction is provided for the elements of a crime, a defense or a general explanatory instruction on evidence or trial procedure, the uniform instruction must be used without substantive modification or substitution."); *State v. Armijo*, 1999–NMCA–087, ¶ 24, 127 N.M. 594, 985 P.2d 764 ("[T]here [is] a host of cases standing for the proposition that the uniform jury instructions and use notes are to be followed without substantial modification.").

{11} In this case, Instruction 3–A, on the page following Instruction 3 (elements instruction), states that the State must prove the act was unlawful. The State argues that jury Instructions 3, 3–A, and 3–B (requiring proof beyond a reasonable doubt that Defendant acted intentionally) should be read together even though they were printed on three separate pages. The State argues further that when the instructions are read together as part of the same instruction, they correctly instruct the jury that the State had to prove Defendant's act was unlawful as an element of aggravated battery, and that unlawfulness and failure to act in self-defense are interchangeable concepts. We disagree.

{12} The relationship between unlawfulness and self-defense was not described. Instruction 3–A defines an unlawful act as one "done with the intent to intrude upon the bodily integrity or personal safety of the victim." The instruction does not explain—and a reasonable juror cannot be expected to know—that for an act to be unlawful, it must not have been done in self defense. *State v. Foxen*, 2001–NMCA–061, ¶ 11, 130 N.M. 670, 29 P.3d 1071 ("The instructions provide no indication as to the relationship between un-

lawfulness and self-defense, and we believe it unreasonable to anticipate that a jury would arrive at such an understanding."). In addition, the instruction may have confused the jury, because a person acting in self-defense may legitimately intend to intrude upon the bodily integrity or personal safety of another.

{13} The State relies on cases holding that the element of unlawfulness is negated by a finding that a defendant was acting in self-defense. *See State v. Cunningham*, 2000–NMSC–009, ¶ 9, 128 N.M. 711, 998 P.2d 176 ("Here, the unlawfulness of Cunningham's behavior was at issue and therefore a reference to unlawfulness or self-defense should have been included in the elements section of the jury instructions."); *State v. Sosa*, 1997–NMSC–032, ¶ 27, 123 N.M. 564, 943 P.2d 1017 (holding that the importance of finding that defendant did not act in self-defense was that defendant acted unlawfully); *State v. Loera*, 1996–NMSC–074, ¶ 13, 122 N.M. 641, 930 P.2d 176 ("While the word 'unlawful' does not appear in the instructions, this language adequately expresses the requirement of unlawfulness because if Loera acted in self-defense, he acted lawfully."); *Parish*, 118 N.M. at 43, 878 P.2d at 992 ("It is the element of unlawfulness that is negated by self-defense."); *State v. Acosta*, 1997–NMCA–035, ¶ 19, 123 N.M. 273, 939 P.2d 1081 (holding that where the trial court gives "an essential-elements instruction containing language that is obviously synonymous with the element of unlawfulness, such as where the instruction uses the words, 'did not act in defense of himself or others,' in place of the words 'acted unlawfully,' " it has adequately instructed jury on issue of unlawfulness). These cases do not help the State. While they do state that instructing on self-defense is an acceptable substitute for instructing on unlawfulness, none actually holds that a general instruction on unlawfulness will suffice when self-defense is an issue, especially when the jury is not told that an act done in self-defense is a lawful act.

{14} The State contends that a reasonable juror would know that an act done in self-defense is lawful because "[c]ountless television shows, movies, and bestsellers are based on the premise that the person on trial is not

guilty of any crime if the jury finds that the killing was in self-defense; reasonable people know that an act of self-defense makes a killing not a crime." This is not a persuasive argument. In fact, Instruction 1 to the jury stated that "[t]he law governing this case is contained in these instructions and it is your duty to follow that law." The proper method of educating jurors about the law relevant to their case is in the jury instructions, not through pop culture.

{15} Next, the State argues that the instructions given in this case fully complied with the requirements of *Parish*. We disagree. As noted above, *Parish* instructs that it is reversible error if the jury instructions would have caused a reasonable juror to be confused or misdirected. *Id.* at 42, 878 P.2d at 991. In *Parish*, the court held:

> [E]ven if the voluntary manslaughter and self-defense instructions are considered together, they do not clearly convey to a reasonable juror that the claim of self-defense negates a specific element of voluntary manslaughter. Nor would a reasonable juror necessarily understand that an acquittal was mandatory if the State could not disprove the self-defense claim beyond a reasonable doubt.

*Id.* at 44, 878 P.2d at 993. In the present case, the charge is aggravated battery with a deadly weapon rather than voluntary manslaughter. However, the proper analysis is indistinguishable from that applied by the *Parish* court. While it is true that a self-defense instruction was given on the fifth page of the jury instructions, the instructions never explained that proof that Defendant had acted in self-defense would negate any of the three essential elements of the offense as enumerated. *See id.* at 43, 878 P.2d at 992 (explaining that a claim of self-defense would not cast reasonable doubt on any of the three elements of the crime: the defendant killed the victim, the defendant knew his acts created a strong probability of death or great bodily harm to the victim, and the date on which it happened). Therefore, contrary to the State's assertions, we hold that the instructions did not satisfy the requirements of *Parish*.

{16} Next, the State argues, relying on *Cunningham*, that even if there was error, reversal is not justified. The State contends "*Cunningham* shows that it was critical to the result in *Parish* that there were two separate errors in the instructions." The two errors in *Parish* were that "(1) the jury instructions did not instruct the jury that they must decide whether the killing was unlawful when a claim of self-defense is raised; and (2) the instructions failed to explicitly place the burden upon the State to prove that Defendant did not act in self-defense." *Parish*, 118 N.M. at 41, 878 P.2d at 990. The State claims that in this case, the second of the two *Parish* errors occurred.

{17} The State does not give sufficient weight to those portions of *Cunningham* emphasizing that *Parish* was decided under a reversible error standard of review, not the fundamental error standard employed in *Cunningham*, *Armijo*, and *Acosta*. *Cunningham*, 2000–NMSC–009, ¶¶ 16, 18–20, 128 N.M. 711, 998 P.2d 176. *Cunningham* did not alter the principle, and indeed reaffirmed it, that when the standard is reversible error, "the failure to include an essential element in the elements instruction can *never* be corrected by including the concept elsewhere in the instructions." *Id.* ¶ 21 (citation and internal quotation marks omitted). We must follow the decision of our Supreme Court. *Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973). We hold that the failure to include the negation of self-defense in the essential elements instruction was reversible error.

■ {18} We reject the State's contention that it is the number of errors, and not the standard of review, that determines the outcome. Under the State's analysis it would make little difference whether the standard was reversible error or fundamental error. Yet the Supreme Court in *Cunningham* made it clear "that the analysis under a fundamental error standard is distinct from the analysis under a reversible error standard." *Id.* ¶ 18. We conclude that under a reversible error standard, an omission from the essential elements instruction cannot be cured by a later instruction.

{19} Finally, the State attempts to distinguish *Foxen*. The defects in the *Foxen* jury instructions were: (1) the elements instruction "place[d] the burden of proof on the State but fail[ed] to incorporate clear reference to self-defense," and (2) the self-defense instruction "omit[ted] any mention of the burden of proof." 2001–NMCA–061, ¶ 10, 130 N.M. 670, 29 P.3d 1071. The State directs us to *Foxen*'s statement that "[i]t is this combination of defects which results in fundamental error." *Id.* What the State again fails to acknowledge, however, is that in the present case we are not reviewing for fundamental error. Therefore, the *Foxen* standard is not applicable.

{20} The only way to correctly instruct the jury in this case is to comply with the applicable Use Note and include as an essential element the requirement that Defendant did not act in self-defense. UJI 14–5181 NMRA 2002. The instructions as given were insufficient.

## CONCLUSION

{21} We reverse Defendant's conviction and remand for a new trial with proper jury instructions.

{22} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and JONATHAN B. SUTIN, Judges.