563 P.2d 108

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Edward F. KRAUL, Defendant-Appellant.**

No. 2754.

Court of Appeals of New Mexico.

March 22, 1977.

Writ of Certiorari Denied April 20, 1977.

Toney Anaya, Atty. Gen., Paquin M. Terrazas, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Convicted of battery upon a peace officer, defendant appeals. The battery took place during an altercation involving defendant, his mother, his grandmother and a Santa Fe police officer. The appeal presents issues concerning instructions given and refused. There was no evidentiary problem with any of the issues. There was evidence supporting the giving of the instructions given and there was evidence supporting the giving of instructions which were refused. We discuss: (1) battery upon a peace officer as an offense included in aggravated battery upon a peace officer; (2) battery as an offense included in battery upon a peace officer; (3) refused instruction on investigative stop; and (4) refused instruction on self-defense.

*Peace Officer Battery as Included Within Peace Officer Aggravated Battery*

Section 40A–22–24, N.M.S.A.1953 (2d Repl. Vol. 6) defines aggravated battery upon a peace officer. It reads:

"A. Aggravated battery upon a peace officer consists of the unlawful touching or application of force to the person of a peace officer with intent to injure that peace officer while he is in the lawful discharge of his duties.

"B. Whoever commits aggravated battery upon a peace officer, inflicting an injury to the peace officer which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a fourth degree felony.

"C. Whoever commits aggravated battery upon a peace officer, inflicting great bodily harm, or does so with a deadly weapon or in any manner whereby great bodily harm or death can be inflicted, is guilty of a third degree felony."

Sarah M. Singleton, Pickard & Singleton, Santa Fe, for defendant-appellant.

Section 40A–22–23, N.M.S.A.1953 (2d Repl. Vol. 6) defines battery upon a peace officer. It reads:

"A. Battery upon a peace officer is the unlawful, intentional touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner.

"B. Whoever commits battery upon a peace officer is guilty of a fourth degree felony."

The indictment charged defendant with violating § 40A–22–24(A), supra, by committing the offense in a manner whereby great bodily harm could be inflicted. Section 40A–22–24(C), supra. At the close of the evidence, the trial court ruled there was insufficient evidence to submit Paragraph C, great bodily harm, to the jury. The trial court instructed on aggravated battery not likely to cause great bodily harm, which is Paragraph B. The trial court also instructed on § 40A–22–23, supra. The jury having convicted defendant of violating § 40A–22–23, supra, we are not concerned with the instruction on § 40A–22–24(B), supra.

Defendant claims that peace officer battery, § 40A–22–23, supra, was not charged in the indictment; that not having been given notice of this charge his conviction must be reversed and he should be discharged. He relies on State v. Trivitt, 89 N.M. 162, 548 P.2d 442 (1976) and State v. Crump, 82 N.M. 487, 484 P.2d 329 (1971). Both Trivitt and Crump involved notice to defendant of a narrowly drawn charge and the limitations resulting from the narrow charge. Neither decision is applicable if peace officer battery is an offense included within peace officer aggravated battery. See State v. Trivitt, supra.

■ For an offense to be included within another offense, the offense must be "necessarily included in the offense charged". R.Crim.P. 44(d). Accordingly, we look to the offense charged in the indictment. State v. Medina, 87 N.M. 394, 534 P.2d 486 (Ct.App.1975). For an offense to be necessarily included, the greater offense cannot be committed without also committing the

lesser. State v. Medina, supra; see State v. Sandoval, 90 N.M. 260, 561 P.2d 1353 (Ct. App. decided March 8, 1977).

Paragraph A of § 40A–22–24, supra, defines the crime of aggravated battery upon a peace officer. Paragraphs B and C of § 40A–22–24, supra, go to the method by which the crime is committed. See State v. Chavez, 82 N.M. 569, 484 P.2d 1279 (Ct.App. 1971).

Whether battery upon a peace officer is included within aggravated battery upon a peace officer is determined by comparing § 40A–22–23, supra, with § 40A–22–24(A), supra. Contrary to defendant's contention, State v. Tanton, 88 N.M. 333, 540 P.2d 813 (1975) did not change this approach.

■ Comparing the two offenses, the significant difference is that the aggravated battery must be "with intent to injure" while battery must be "done in a rude, insolent or angry manner." Considering a similar distinction in non-peace officer statutes, we held that battery was included within the offense of aggravated battery. State v. Duran, 80 N.M. 406, 456 P.2d 880 (Ct.App.1969).

Defendant suggests that Duran was incorrectly decided. He states: "If one batters a peace officer with an intent to injure him it is aggravated battery on a peace officer no matter how courteously, calmly or unenraged one was. One simply does not need to be rude or angry to have an intent to injure." The contention is that one can commit aggravated battery (intent to injure) without also committing battery (rude, insolent or angry manner) and, therefore, battery is not an included offense.

Defendant's contention reduces to an exercise in semantics. One cannot commit battery with an intent to injure without also proceeding in a rude, insolent or angry manner. See the various definitions of "rude", "insolent" and "angry" in Webster's Third New International Dictionary (1966). The meaning of "rude" includes offensive in manner or action; the use of force. The meaning of "insolent" includes insult; contemptuous or brutal in behavior. The

meaning of "angry" includes various forms of displeasure.

Battery upon a peace officer is a charge included within the charge of aggravated battery upon a peace officer. The battery upon a peace officer instruction was proper; his conviction is for an offense included within the charge of which he had notice.

*Battery as Included Within Peace Officer Battery*

■ The trial court refused defendant's request to instruct on simple battery as an included offense. Section 40A–3–4, N.M.S.A.1953 (2d Repl. Vol. 6) reads:

"Battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner.

"Whoever commits battery is guilty of a petty misdemeanor."

One distinction between simple battery and aggravated battery upon a peace officer is the "rude, insolent or angry" versus "intent to injure" distinction previously discussed.

Another distinction is that simple battery is "to the person of another" while aggravated battery upon a peace officer is "to the person of a peace officer . . . while he is in the lawful discharge of his duties." Both offenses involve persons. One cannot batter a peace officer while in the lawful discharge of his duties without battering the person of another. There being evidence that the police officer was not in the lawful discharge of his duties in connection with the altercation, the trial court erred in refusing to instruct on simple battery. *State v. Duran*, supra.

*Refusal to Instruct on an Investigatory Stop*

The jury was instructed that to commit battery upon a peace officer, there must be proof that the officer was in the lawful discharge of his duties. See *State v. Bloom*, 90 N.M. 226, 561 P.2d 925 (Ct.App. decided March 16, 1976), reversed on other grounds, 90 N.M. 192, 561 P.2d 465, Sup.Ct., decided March 10, 1977. There was no instruction defining lawful discharge of duties. No such instruction was requested although the lawfulness of the officer's actions was a severely disputed factual question. See *State v. Dosier*, 88 N.M. 32, 536 P.2d 1088 (Ct.App.1975); *State v. Bell*, 84 N.M. 133, 500 P.2d 418 (Ct.App.1972).

Both parties submitted a requested instruction on when a police officer may approach a person to investigate possible criminal behavior. See *State v. Galvan*, 90 N.M. 129, 560 P.2d 550 (Ct.App. decided February 8, 1977). Both requests were refused.

Defendant asserts the trial court erred in refusing his requested instruction. He states: "When, as in the case at bar, there is a factual question as to what happened, it is necessary to inform the jury when the police have a legal right to detain a person. This is necessary to ensure that the jury's determination of whether the officer was lawfully discharging his duties is based on a legal standard."

■■ The purpose of an instruction is to enlighten the jury. An instruction which is confusing, rather than enlightening, is properly refused. *State v. Selgado*, 76 N.M. 187, 413 P.2d 469 (1966). In the case of a failure to instruct, a correct written instruction must be tendered. *State v. Dutchover*, 85 N.M. 72, 509 P.2d 264 (Ct.App.1973).

■ There was no error in refusing the requested instruction on an officer's right to detain a person. The requested instruction was incomplete and, therefore, it was not a correct instruction. The requested instruction was incomplete because it focused only on the officer's initial approach to defendant and disregarded the officer's attempt to arrest after defendant allegedly hit the officer. In light of the evidence, the requested instruction would have confused the jury on the issue of lawful discharge of duties. See *State v. Bloom*, supra.

*Refused Instruction on Self-Defense*

The trial court instructed the jury on the right to resist an unlawful arrest. *State v.*

*Calhoun*, 23 N.M. 681, 170 P. 750 (1917). No issue is raised concerning this instruction. See Comment, 7 Nat. Res. J. 119 (1967), *Criminal Law—Arrest—The Right to Resist Unlawful Arrest.*

Defendant also requested an instruction on self-defense in a non-homicide situation. See U.J.I. Crim. 41.51. The trial court refused the requested instruction. Defendant asserts this was error.

There are two parts to this issue: (1) there being no question that there was evidence supporting a self-defense instruction, was defendant entitled to such an instruction; and (2) if entitled to an instruction, was the requested instruction a proper instruction?

*State v. Heisler*, 58 N.M. 446, 272 P.2d 660 (1954) states on unqualified right to a self-defense instruction in a criminal case when there is evidence which supports the instruction. *Heisler* involved private individuals. Self-defense instructions have been involved in cases where self-defense was asserted as a defense in a matter involving an attack on a police officer. *State v. Selgado*, supra; *State v. Middleton*, 26 N.M. 353, 192 P. 483 (1920); *State v. Calhoun*, supra; *Brobst v. El Paso & Southwestern Co.*, 19 N.M. 609, 145 P. 258 (1914). From these decisions we infer that the giving of a self-defense instruction is not error. Our question is the opposite—is it error to refuse a self-defense instruction when an instruction has been given on the right to resist an unlawful arrest? Compare *State v. Smith*, 88 N.M. 541, 543 P.2d 834 (Ct.App. 1975).

■ The right of self-defense is not barred simply because the other person in the affray is a police officer. There are, however, limitations on this right. 1 Wharton's Criminal Law and Procedure (Anderson 1957) § 216 states:

"The rule of self-defense applies to the case of an officer attempting to make an arrest, who abuses his authority and transcends the bounds thereof by the use of unnecessary force and violence, as well as to the case of a private individual who unlawfully uses such force and violence.

"As against an officer using necessary force to overcome resistance to an arrest, or using proper force to prevent an escape, the person sought to be arrested has no right to act in self-defense. When a man puts himself in a state of resistance and openly defies the officers of the law, he is not allowed to take advantage of his own wrong, if his life is thereby endangered, and set up the excuse of self-defense."

*Gray v. State*, 463 P.2d 897 (Alaska 1970) states:

"The overwhelming weight of authority indicates that a person subjected to an unlawful arrest may use reasonable force to defend himself. In the case of *Miller v. State*, 462 P.2d 421 (Alaska 1969), we modified this rule by holding that there was no right to resist a peaceful arrest, even though the arrest was unlawful. The *Miller* case did not deal, however, with the circumstances of the present case, where it has been claimed that the arrest was unlawful because Officer Strong used unprivileged force to effect the arrest. An officer in making an arrest is privileged by statute to use only that force which is necessary to restrain the arrested person. To the use of necessary force the arrested person cannot claim the privilege of self-defense. If more than necessary force is used, then the officer commits an unprivileged assault on the arrested person. To an arresting officer's unprivileged use of force, the arrested person must have the right to use reasonable force to defend himself."

Criticizing the right to resist an unlawful arrest, Comment, 7 Nat. Res. J., supra, at 126 states: "When an officer attempting to make an arrest abuses his authority and uses unnecessary force or violence, the right to self-defense arises, whether or not the arrest was otherwise lawful." See *State v. Mulvihill*, 57 N.J. 151, 270 A.2d 277 (1970).

■ One does have a right to defend oneself from a police officer. This right exists whether the attempted arrest is law-

ful or unlawful. This right, however, is limited. One may defend oneself against excessive use of force by the officer. One does not have the right to self-defense when the officer is using necessary force to effect an arrest. See *Brobst v. El Paso & Southwestern Co.*, supra; compare *State v. Calhoun*, supra.

 The right of self-defense against a police officer is a concept different from the right to resist an unlawful arrest. Self-defense is for the purpose of protecting a person's bodily integrity and health. *State v. Mulvihill*, supra. The purpose of resistance to an unlawful arrest is to prevent the arrest. Comment, 7 Nat. Res. J., supra. In jurisdictions where the right to resist an unlawful arrest has been abolished, the right of self-defense against excessive force by a police officer continues to exist. *Gray v. State*, supra: *State v. Mulvihill*, supra.

We hold that defendant did have a limited right of self-defense against the police officer, that he was entitled to an instruction on that limited right. The instruction concerning resistance to an unlawful arrest did not cover defendant's right to self-defense; the unlawful arrest instruction went only to the arrest; it did not cover the right to defend against excessive force whether or not the arrest was unlawful.

Although defendant was entitled to an instruction on his limited right to self-defense, refusal of the requested instruction was not error. The requested instruction did not limit defendant's right of self-defense to situations where the officer used excessive force; the requested instruction would have given defendant an unlimited right of self-defense.

The requested instruction was properly refused because it was an incorrect statement of the law. *State v. Dutchover*, supra.

For failure to instruct on simple battery as an offense included with the charge of aggravated battery upon a peace officer, the conviction is reversed. The cause is remanded with instructions to grant defendant a new trial.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.