2008-NMSC-032

186 P.3d 245

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Robert ELLIS, Defendant–Respondent.**

No. 30,258.

Supreme Court of New Mexico.

May 28, 2008.

**254**

Gary K. King, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Templeton & Crutchfield, C. Barry Crutchfield, Lovington, NM, for Respondent.

## OPINION

BOSSON, Justice.

{1} During a routine traffic stop, Defendant Robert Ellis threatened Eddy County Sheriff's Deputy Ruben Castro with a tire iron, for which he was charged and convicted of aggravated assault on a peace officer, a felony. At trial, Defendant claimed that he acted in self-defense against the deputy's alleged use of excessive force, and the jury was so instructed, though imperfectly. At the heart of this case lies Defendant's claim that he was entitled to a self-defense instruction, and the related issue of whether any jury reasonably could have found Deputy Castro's use of force excessive in light of the evidence presented at trial. We conclude that Defendant did not present evidence of excessive force by Deputy Castro, and thus was not entitled to a jury instruction on self-defense. It follows that any error in the self-defense instruction actually given at trial is inconsequential. The Court of Appeals having held otherwise, we reverse and affirm Defendant's conviction.

## BACKGROUND

{2} The following overview of the events that took place on August 13, 2004, provides the initial framework for our discussion, which we will supplement as necessary further in the Opinion. The facts recited in this Opinion are derived from the trial testimony of Defendant, the passenger Roy Peppers, and Deputy Castro, as well as from the videotape of the encounter, which this Court reviewed, that was recorded by Deputy Castro's in-car camera. The videotape of the encounter was admitted as evidence and was played for the jury. A large portion of the encounter was not captured on tape, and many of the key scenes take place off-camera. However, the deputy's microphone recorded the conversations that took place off-camera. Because we review the evidence in the light most favorable to the giving of the self-defense instruction, *State v. Duarte*, 1996–NMCA–038, ¶ 5, 121 N.M. 553, 915 P.2d 309, when there is contradictory testimony, we rely on Defendant's version of the events. For example, Deputy Castro denied drawing his gun during the first encounter, contrary to Defendant's testimony that the deputy drew his gun twice. For purposes of this Opinion, we consider the contested facts as alleged by Defendant.

{3} The events that transpired are best described as two separate encounters occur-

ring on the same evening. The first encounter occurred when Deputy Castro pulled Defendant over for the seatbelt violation. The second encounter occurred after Defendant refused to stay at the site of the initial encounter, contrary to the Deputy's instructions. At trial, Defendant focused on the events of the first encounter, specifically the fact that Deputy Castro drew his weapon twice, as evidence that Deputy Castro used excessive force, which justified Defendant's threat of force during the second encounter.

{4} The first encounter began when Deputy Castro observed that neither occupant of an oncoming truck was wearing a seatbelt. Deputy Castro activated his emergency lights, indicating that he wanted the vehicle to pull over. When Deputy Castro approached the truck, both Defendant and the passenger were wearing their seatbelts. Defendant told Deputy Castro that he was test-driving the truck, which belonged to a Terry Mann. After processing their information, Deputy Castro stated that he was going to issue Defendant a citation for failure to wear a seatbelt and a warning for lack of insurance.

{5} At this point, Defendant's mood appeared to change. He argued with Deputy Castro and he went so far as to grab his driver's license from the deputy's clipboard without permission. It was then, according to Defendant, that Deputy Castro first drew his gun and pointed it at the ground. Defendant started pacing back and forth between his truck and the patrol car. Defendant testified that Deputy Castro pulled his gun a second time during this initial encounter and pointed it directly at Defendant. The first encounter ended when Defendant returned to the truck and left the scene. Defendant testified that he told the deputy that he was returning to the Mann house because he was afraid that the deputy was going to shoot him, and he wanted witnesses. Deputy Castro followed Defendant with his siren activated for the mile-and-a-half trip to Mann's home.

{6} The second encounter began when Defendant arrived at the Mann house. Upon reaching the driveway, Defendant got out of his car in an aggressive manner, immediately approached the deputy's patrol car, and confronted him. Defendant can be heard on the video threatening the deputy, yelling, "I'll whip your f------ ass," and "I'll beat your ass.... Don't ever pull a gun on me." Meanwhile, Deputy Castro can be heard yelling, "Get down, get down." Deputy Castro then sprayed Defendant twice with pepper spray and, testified Defendant, drew his weapon again. According to Deputy Castro, he drew his gun for the first time when he got out of his patrol car at the second stop.

{7} Defendant testified that at this point he needed to protect himself against Deputy Castro, and so he picked up a tire iron from the bed of the truck. With the tire iron in hand, he approached the deputy in a threatening manner, although he never actually struck the deputy. Instead, Defendant threw the tire iron away from the deputy's direction and, after it landed, returned it to the bed of the pickup truck. During this time, both Defendant and Peppers continued to threaten Deputy Castro. Eventually, other officers arrived at the house and, after a struggle, Defendant was subdued and arrested. Defendant was charged with aggravated assault upon a peace officer and with resisting, evading or obstructing a peace officer.

{8} Defendant's first trial ended with a conviction for the misdemeanor count of resisting, evading or obstructing, but with a mistrial on the felony count of aggravated assault upon a peace officer. Defendant was tried a second time for aggravated assault and was convicted. In both trials, Defendant argued successfully that he was entitled to a self-defense instruction, claiming that Deputy Castro used excessive force when he drew his gun twice during the first encounter for a mere seatbelt violation.

{9} And, in both trials, the district court agreed that Defendant was entitled to a self-defense instruction. However, the court did not include the phrase, "Defendant did not act in self defense," as one of the essential elements of the crime of aggravated assault that the State was required to prove. During the jury instruction conference at the second trial, Defendant specifically requested that the phrase be included in the aggravated assault instruction, but the court refused,

stating, "Self-defense covers it. .... That doesn't go in the elements instruction."

{10} After his conviction for aggravated assault, Defendant appealed to the Court of Appeals arguing that his aggravated assault conviction should be reversed because the jury was improperly instructed with regard to self-defense. *State v. Ellis,* 2007–NMCA–037, ¶ 7, 141 N.M. 370, 155 P.3d 775. The Court of Appeals agreed with Defendant, holding that the failure to include the phrase "did not act in self defense," having been preserved at trial, was reversible error justifying a new trial. *Id.* ¶¶ 29–31. We granted certiorari to determine whether the evidence presented at trial entitled Defendant to a self-defense instruction, and thus, whether any error in the jury instruction given was harmless.

## DISCUSSION

■ {11} The Court of Appeals, after a thorough discussion, held that "the district court erred in refusing Defendant's tendered jury instruction." *Id.* ¶ 7. On certiorari to this Court, and on appeal to the Court of Appeals, the State concedes error. Nevertheless, the State contends that Defendant's conviction should be upheld because Defendant was not entitled to a self-defense instruction. For the reasons that follow, we agree that the trial court committed error below.

■ {12} As we have previously held, a failure to instruct the jury "on the element of unlawfulness after self-defense evidence had been introduced" is reversible error, because the jury is not instructed on all of the elements essential for conviction. *State v. Parish,* 118 N.M. 39, 44, 878 P.2d 988, 993 (1994). The Use Notes for the Uniform Jury Instructions on self-defense provide that, if a self-defense instruction is necessary, the district court *must* include the phrase "[t]he defendant did not act in self defense" with the essential elements of the crime that the State must prove. *See* UJI 14–5181 NMRA Use Note 1; UJI 14–5183 NMRA Use Note 1. When a defendant is charged with certain offenses, including assault and battery, the court should include an "unlawfulness instruction." UJI 14–132 NMRA Use Note 1. The unlawfulness instruction "is intended to

aid the court and the parties in preparing an instruction when the statutory definition of the offense includes the term 'unlawful' and an issue is raised as to the lawfulness of the defendant's act." *Id.* The Use Note further instructs that if the "instruction is given, add to the essential elements instruction of the offense charged, 'The defendant's act was unlawful.' " *Id.* Finally, the Use Note states that the "instruction need not be given if the unlawfulness element is included in another instruction such as self-defense or defense of another." *Id.*

{13} The district court, believing that the "unlawfulness instruction" was adequate, rejected Defendant's requested instruction, stating, "You don't get both." The Use Notes make it clear that when a self-defense instruction is given, the district court must include the phrase, "The Defendant did not act in self defense." Thus, the district court, when faced with the decision of including either the unlawfulness instruction or the phrase "The Defendant did not act in self defense," erroneously chose to submit only the "unlawfulness instruction." Therefore, we agree with Defendant's position, and with the State's concession, that the jury instruction on aggravated assault of a peace officer was flawed.

## The Error is Reversible Only if the Self-Defense Instruction was Justified

■ {14} When, as in this case, a challenge to the jury instructions has been preserved, we review for reversible error. *State v. Benally,* 2001–NMSC–033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "A jury instruction which does not instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury is reversible error." *Parish,* 118 N.M. at 44, 878 P.2d at 993 (quoted authority omitted). "The trial court's rejection of [d]efendant's submitted jury instructions is reviewed by this Court de novo, because it is closer to a determination of law than a determination of fact." *State v. Lucero,* 1998–NMSC–044, ¶ 5, 126 N.M. 552, 972 P.2d 1143.

■ {15} However, "a self-defense instruction is required whenever [or if] a de-

fendant presents evidence sufficient to allow reasonable minds to differ as to all elements of the defense." *State v. Lopez,* 2000–NMSC–003, ¶ 23, 128 N.M. 410, 993 P.2d 727 (quoted authority omitted). When asserting self-defense against a private citizen, but not against a law enforcement officer, a defendant has an *"unqualified* right to a self-defense instruction in a criminal case when there is evidence which supports the instruction." *State v. Kraul,* 90 N.M. 314, 318, 563 P.2d 108, 112 (Ct.App.1977), *cert. denied,* 90 N.M. 637, 567 P.2d 486 (1977) (emphasis added). By comparison, a person has only a *qualified* right to assert self-defense against a police officer, because police officers have a duty to make arrests and a right to use reasonable force when necessary. *Id.* at 319, 563 P.2d at 113; *Alaniz v. Funk,* 69 N.M. 164, 168, 364 P.2d 1033, 1035 (1961) ("It was the duty of the [officer] to use every reasonable effort to apprehend the felon; ... and even though the unfortunate results occurred, the [officer] should not be held liable for attempting to perform his duty."). " 'Because of [the] duties devolved upon [the officer] [sic] the law throws around him a special protection. [H]is duty is to overcome all resistance, and bring the party to be arrested under physical restraint, and the means he may use must be coextensive with the duty.' " *State v. Vargas,* 42 N.M. 1, 7, 74 P.2d 62, 66 (1937) (quoting *State v. Dierberger,* 96 Mo. 666, 10 S.W. 168, 171 (1888)) (citation omitted). Therefore, although "[o]ne does have a right to defend oneself from a police officer," it is clear that "[t]his right ... is limited." *Kraul,* 90 N.M. at 318–19, 563 P.2d at 112–13.

■ {16} This limitation entitles one to assert self-defense only when the officer is using excessive force. "One may defend oneself against excessive use of force by the officer. One does not have the right to self-defense when the officer is using necessary force to effect an arrest." *Id.* at 319, 563 P.2d at 113; *see also People v. Sims,* 374 Ill.App.3d 427, 312 Ill.Dec. 753, 871 N.E.2d 153, 157 (2007) ("[A]n instruction on self-defense is required in a resisting arrest (or battery) case when the defendant has presented some evidence of excessive force on the part of the arresting officer.").

■ {17} "[G]enerally, the question of the reasonableness of the actions of the officer ... is a question of fact for the jury." *Alaniz,* 69 N.M. at 167, 364 P.2d at 1035. However, a court may make that determination, as a matter of law, when "the minds of reasonable [jurors] could not differ under the circumstances as they appeared to the [officer] at the time." *Id.* at 168, 364 P.2d at 1035. Therefore, when a defendant asserts self-defense against a police officer, a court must determine whether, under the evidence presented, reasonable minds could differ with respect to whether the officer used excessive force. If the court determines that reasonable minds could differ, the jury must be instructed on an officer's limited right to use reasonable and necessary force, and on the accused's limited right of defense if the officer used excessive force. If, however, the court concludes that reasonable minds could not find that the officer used excessive force, the matter ends there, and the court should not instruct the jury on the elements of self-defense.[1]

**Evaluating a Claim of Excessive Force Sufficient to Justify a Claim of Self-defense Against a Peace Officer**

{18} Defendant argues that Deputy Castro's actions, particularly when he pointed his gun at Defendant during the initial encounter, constituted excessive force, or a reason-

1. This Opinion does not address mistake of fact. We intend no change in those situations where, as an example, an accused alleges that he resorted to self-defense based on his mistaken belief that the aggressor was not an officer. Significantly, with respect to aggravated assault on a peace officer, the crime charged in this case, a defendant's knowledge about the identity of an officer is an element of the crime that the State is required to prove beyond a reasonable doubt. *See* NMSA 1978, § 30–22–22 (1971); *Reese v.* *State,* 106 N.M. 505, 745 P.2d 1153 (1987). Thus, if the State could not prove beyond a reasonable doubt that the defendant was aware that he was assaulting a police officer, the State would not have met its burden. And, where the defendant's knowledge about the identity of the officer is not an element of a crime, this Opinion should not be read as foreclosing a defendant from asserting a mistake-of-fact defense regarding his mistaken belief about the identity of the aggressor.

able jury could so find, which triggered his right to threaten force in his own defense. Defendant contends that "in the absence of evidence of great bodily harm or death, the display of a deadly weapon by an officer under the facts of this matter is not supportable." Relying on *State v. Hill,* 2001–NMCA–094, 131 N.M. 195, 34 P.3d 139, Defendant further asserts that the question of excessive force is an issue of fact within "the fact-finding responsibility of the jury." The Court of Appeals agreed stating, "because there was sufficient evidence to support a self-defense instruction, the issue of whether Deputy Castro used excessive force is best left to a properly instructed jury." *Ellis,* 2007–NMCA–037, ¶ 27, 141 N.M. 370, 155 P.3d 775 (citing *Hill,* 2001–NMCA–094, ¶ 8, 131 N.M. 195, 34 P.3d 139).

{19} The State takes the opposite position. It argues, both in this Court and in the Court of Appeals, that reasonable minds could not differ because the deputy's actions, no matter how Defendant perceived them, did not amount to excessive force. Therefore, Defendant had no right to threaten Deputy Castro with a tire iron in his own defense. The State suggests that excessive force claims should be analyzed under the "reasonableness" standard of the Fourth Amendment to the U.S. Constitution. Convinced that the deputy acted reasonably, the State requests that "[t]his Court ... determine as a matter of law that there was no excessive force, because reasonable minds could not differ on this point."

{20} The Court of Appeals rejected the State's reliance on cases setting forth the reasonableness standard of the Fourth Amendment because, it concluded, those cases "address the issue of excessive force by police officers in the context of civil lawsuits," and because "the bulk of [the cases cited by the State] are federal cases decided under different standards." *Ellis,* 2007–NMCA–037, ¶¶ 22, 23, 141 N.M. 370, 155 P.3d 775. The Court also rejected the reasonableness standard because it focuses on the need for force from the officer's perspective instead of

on the officer's use of force as perceived by the defendant. *Id.* ¶ 22. The Court of Appeals concluded that an analysis of excessive force, sufficient to justify a defendant's use of force in his own defense, is properly viewed from the perspective of " 'a reasonable person in the same circumstances ... as the defendant.' " *Id.* (alteration in original) (quoting *State v. Hernandez,* 2004–NMCA–045, ¶ 10, 135 N.M. 416, 89 P.3d 88, *cert. denied,* 2004–NMCERT–004, 135 N.M. 562, 91 P.3d 603).

{21} As an initial matter, therefore, we must determine the appropriate standard of analysis for determining whether an officer's use of force was excessive, sufficient to justify a limited claim of self-defense. We begin with New Mexico case law which, though limited, offers some guidance. After reviewing New Mexico law, we turn to case law from other jurisdictions which we find instructive.

{22} Our examination begins with New Mexico case law discussing the use of force in contexts other than self-defense.[2] In *Alaniz,* when discussing the trial court's conclusion that an officer did not use excessive force in shooting a fleeing felon, this Court examined the "circumstances as they appeared to the [officer] at the time of the shooting." *Alaniz,* 69 N.M. at 168, 364 P.2d at 1035. We noted that "[w]hen the state sends an officer to make an arrest for a felony, he must use *his best judgment* to make the arrest, peaceably if he can, but forcibly if he must." *Id.* (emphasis added). Therefore, when considering whether the officer's use of force was reasonable, we considered the perspective of the officer.

{23} Also, in determining whether an officer's actions provoked a defendant sufficiently to entitle him to a *step-down instruction* on voluntary manslaughter, this Court first had to decide whether the officer was acting lawfully, because "[a]cts of a peace officer exercising his duties in a lawful manner cannot rise to the level of sufficient provocation"

---

2. We acknowledge that the context of a police officer on trial for excessive force differs from the context of a citizen seeking to justify the use of force against an officer in his own defense. In each case, however, the necessity or reasonableness of the officer's use of force has to be judged by a jury according to some objective standard of police conduct.

to lower the grade of homicide. *State v. Manus*, 93 N.M. 95, 100, 597 P.2d 280, 285 (1979), *overruled on other grounds by Sells v. State*, 98 N.M. 786, 653 P.2d 162 (1982). Our inquiry into the lawfulness of the officer's actions focused on whether the officer was "exercising reasonable and necessary force, or . . . unreasonable, and therefore, excessive force." *Id.* We looked specifically to the officer's perspective, stating that " '[o]fficers, within reasonable limits, are the judges of the force necessary to enable them to make arrests or to preserve the peace.' " *Id.* (quoting *Mead v. O'Connor*, 66 N.M. 170, 173, 344 P.2d 478, 479–80 (1959)); *see also State v. Mantelli*, 2002–NMCA–033, ¶ 25, 131 N.M. 692, 42 P.3d 272 (holding that the standard to be applied when an officer asserts the defense of justifiable homicide is "an objective analysis evaluated from [the officer's] perspective at the time of the incident and is necessarily a factual inquiry"); *State v. Johnson*, 1998–NMCA–019, ¶ 21, 124 N.M. 647, 954 P.2d 79 (holding that the standard to be applied when a citizen asserts the defense of justifiable homicide is one of objective reasonableness from the perspective of the person applying lethal force).

{24} In *Kraul*, a case involving a claim of self-defense against a police officer, our Court of Appeals provided additional guidance by observing that "[o]ne may defend oneself against excessive use of force by the officer," but not "when the officer is using necessary force to effect an arrest." 90 N.M. at 319, 563 P.2d at 113. A fair reading of *Kraul* suggests that the police officer's privilege of using *necessary* force implies that the necessity of the force should be measured from the perspective of an objectively reasonable officer and not from what an arrestee might think would be reasonable. Otherwise, an officer would have to take the subjective beliefs of the person to be arrested into consideration when determining the amount of force necessary to accomplish the arrest.

{25} We are also informed by federal jurisprudence regarding the Fourth Amendment's protections against unreasonable searches and seizures, including the protection against excessive force (an unreasonable seizure) in the course of an arrest. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment. . . ."). While "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," the officer's use of force must be reasonable. *Id.* at 396, 109 S.Ct. 1865 (citing *Terry v. Ohio*, 392 U.S. 1, 22–27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

{26} According to the text of *Graham*, any determination about the reasonableness of an officer's use of force "must be judged from the perspective of a reasonable officer on the scene." *Id.* The standard "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865. A court considers "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865; *see also Archuleta v. LaCuesta*, 1999–NMCA–113, ¶ 8, 128 N.M. 13, 988 P.2d 883 ("The reasonableness of the use of deadly force in any particular situation is an objective test from the perspective of the officer on the scene, with the understanding that officers must often make split-second decisions in difficult situations about what force is necessary."). Significantly, under the analysis in *Graham*, a court must consider "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397, 109 S.Ct. 1865.

{27} In an effort to distinguish its analysis from this federal constitutional jurisprudence, our Court of Appeals relied on its opinion in *Hernandez*, and "warned against

'borrowing legal propositions pertaining to excessive force in a civil proceeding and importing them wholesale into the context of self-defense in a criminal action.'" *Ellis,* 2007–NMCA–037, ¶ 22, 141 N.M. 370, 155 P.3d 775 (quoting *Hernandez,* 2004–NMCA–045, ¶ 10, 135 N.M. 416, 89 P.3d 88). The *Hernandez* court was concerned that applying the civil rights standard, i.e., viewing the circumstances from an officer's perspective, "would criminalize self-defense any time an officer believes his actions are justified, regardless of whether the officer's actions would put a reasonable citizen in fear of immediate danger of bodily harm." *Hernandez,* 2004–NMCA–045, ¶ 10, 135 N.M. 416, 89 P.3d 88.

{28} We appreciate the concern, expressed in both the instant appeal and in *Hernandez,* that we not erect an unreasonably high barrier to an appropriate claim of self-defense against the use of excessive force by a police officer. We are not persuaded, however, that analyzing an officer's use of force by using an objectively reasonable standard will necessarily "criminalize self-defense." Certainly, if a court were to consider only the *subjective* beliefs of the officer at the scene, self-defense against a peace officer might be eviscerated. *See Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868 (adopting an objective, reasonableness standard for searches and seizures because "[i]f subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be secure in their persons, houses, papers and effects, only in the discretion of the police" (quoted authority omitted)). An objective view, however, based on a reasonable officer's opinion about the use of force, and not on the officer's subjective view, comports with our view that a well-trained police officer, within reasonable limits, is in the best position to "judge ... the force necessary to enable them to make arrests or to preserve the peace," *Manus,* 93 N.M. at 100, 597 P.2d at 285 (quoted authority omitted), while at the same time remaining faithful to the tenet that "[t]he right of self-defense is not barred simply because the other person in the affray is a police officer." *Kraul,* 90 N.M. at 318, 563 P.2d at 112.

{29} Most importantly, it will be the jury, not the officer, who ultimately decides whether the officer's use of force, when viewed objectively, was reasonable or excessive, assuming an adequate evidentiary record. And the State always bears the burden of persuasion that the degree of force used by the officer was reasonable and not excessive. *See* UJI 14–5181 ("The burden is on the state to prove beyond a reasonable doubt that the defendant did not act in self defense. If you have a reasonable. doubt as to whether the defendant acted in self defense, you must find the defendant not guilty."); UJI 14–5183 (same).

{30} Further, the Court of Appeals' opinion in *Hernandez* contains an internal inconsistency, which we resolve in this Opinion. The opinion correctly acknowledges that officers are permitted to use "necessary force" and that the self-defense jury instruction must be modified to reflect the "sharply limited" nature of self-defense against a peace officer. *Hernandez,* 2004–NMCA–045, ¶ 11, 135 N.M. 416, 89 P.3d 88. The *Hernandez* court, discussing the self-defense instruction, aptly noted that the instruction offered at trial "precisely conveyed the limits on self-defense against a peace officer" when it "included the language that '[o]ne does not have the right to self defense when the *officer is using necessary force to effect an arrest.*'" *Id.* (emphasis added) (alteration in original). The court concluded that "[t]his language communicated to the jury the essential legal proposition that citizens must submit to necessary officer force." *Id.* Nevertheless, the court rejected viewing excessive force from the officer's perspective because such a perspective would "criminalize self-defense any time an officer believes his actions are justified." *Id.* ¶ 10.

■ {31} For reasons previously stated, we believe that an objective reasonableness standard addresses the apparent inconsistencies in *Hernandez.* Such a standard acknowledges that "necessary force to effect an arrest" is properly viewed objectively from a reasonable officer's perspective, but also allows a citizen to assert self-defense against a peace officer, based upon a proper record, despite the officer's subjective belief that the

amount of force he used was necessary. The State must prove to the jury that the officer met an objectively reasonable standard in employing force against the defendant. This standard is consistent with case law in New Mexico, recognizing that the jury should be instructed on the limited nature of self-defense against a peace officer. *See Hill,* 2001–NMCA–094, ¶ 11, 131 N.M. 195, 34 P.3d 139(noting that, on remand, the jury instruction should "incorporat[e] the limitations applicable to self-defense against a police officer"). To the limited extent that *Hernandez* conflicts with our holding, we modify that language in the Court of Appeals' opinion today.

{32} That the jury is called upon to determine both the reasonableness of the officer's use of force and the reasonableness of defendant's resort to self-defense is consistent with case law from other jurisdictions, where courts have indicated that self-defense against a peace officer includes an additional requirement—that the officer used excessive force. *See, e.g., Wright v. State,* 705 So.2d 102, 105 (Fl.Dist.Ct.App.1998) ("Whether a police officer used excessive force *and* whether a defendant used reasonable force in response are jury questions . . . ." (emphasis added)); *Sims,* 312 Ill.Dec. 753, 871 N.E.2d at 157 ("[A]n instruction on self-defense is required in a resisting arrest (or battery) case when the defendant has presented some evidence of excessive force on the part of the arresting officer."); *State v. Cox,* 532 N.W.2d 384, 388 (N.D.1995) ("One of the disputed issues was whether the evidence showed that [the officer] was acting lawfully when he arrested Cox. . . . *Another question for the jury* was whether Cox's response to any illegal conduct by [the officer] was reasonable." (Emphasis added.)); *Rodriquez v. State,* 544 S.W.2d 382, 384 (Tex.Ct.Crim.App. 1977) ("Whether the officer used greater force than necessary, *and* whether appellant's beliefs, fears and actions were reasonable as required by statute, were also fact issues for the jury . . . ." (emphasis added)).

{33} Importantly, neither party should be constrained in the evidence they offer with respect to the objective reasonableness of the officer's conduct. The State may want to offer the testimony of the officer involved and perhaps expert testimony as well. The defendant should be free to offer evidence with respect to his own perspective and that of a reasonable person under similar circumstances in an effort to persuade the jury that the officer's conduct fell short of an objectively reasonable standard.

{34} Of course, the court must first be persuaded that reasonable minds could differ on whether the officer's use of force was excessive, such that a reasonable jury could so conclude. In the case before us, we must keep in mind that Defendant has only claimed that Deputy Castro used excessive force when he drew his gun during the first encounter in response to Defendant's refusal to sign the seatbelt violation. Significantly, Defendant does not claim that any of the deputy's actions during the second encounter were excessive. Therefore, we must inquire whether reasonable minds could differ regarding Deputy Castro's use of force during the first encounter and find it excessive. We now turn to that inquiry.

## Was evidence presented of Deputy Castro's use of excessive force so as to submit that issue to the jury?

{35} Reviewing the evidence in the light most favorable to giving the self-defense instruction, we determine whether reasonable minds could differ regarding whether Deputy Castro used excessive force. Defendant asserts that he had the right to defend himself against Deputy Castro because Deputy Castro twice drew his weapon during the initial encounter, the second time pointing it directly at Defendant. In reviewing the evidence, we consider the facts and circumstances of the first stop, "including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. As earlier stated, when faced with conflicting evidence, we assume the truth of Defendant's version for purposes of evaluating whether Defendant sufficiently established a jury issue regarding excessive

force. We now turn to the evidence in the record.

{36} During the first encounter Defendant did not stay in the truck, despite Deputy Castro's orders to do so, and moved about repeatedly contrary to instructions. During this time, the passenger, Peppers, also remained out of the truck. While the deputy was collecting the initial information, Defendant testified that he "leaned over [Deputy Castro] to make sure everything he was writing down was right." This would not be too difficult considering Defendant's height is approximately 6'4", while Deputy Castro's height is 5'5". And, Deputy Castro testified that Defendant was approximately two feet from him when Defendant approached Deputy Castro at his patrol car to question him about the citation. Twenty-one feet is considered a safe distance according to Deputy Castro's testimony.

{37} During these first few moments of the initial stop, Defendant was polite and cooperative, but his demeanor changed dramatically when Deputy Castro informed Defendant that he was issuing him a citation. Defendant refused to sign the citation, stating, "I won't sign nothing. There's no way I'm signing a ticket for a seatbelt—You can't pull me over for a seatbelt. Not in the State of New Mexico."[3] Defendant continued to refuse to sign the citation, stating, "You better call all the backup you wanna call—I'm not signing that ticket." At some point during this encounter, portions of which took place off-camera, Defendant admitted that he grabbed his license from the deputy's clipboard. Based on Defendant's own testimony and the video footage, it is clear that Defendant acted very aggressively, and that he was both physically and verbally hostile toward Deputy Castro.

{38} Defendant acknowledged that Deputy Castro had been polite and respectful toward him, but that the deputy's manner changed after Defendant refused to sign the citation and grabbed his license off the deputy's clipboard. It was at that point, according to Defendant, that Deputy Castro pulled his gun and pointed it at the ground. Deputy Castro testified that he did not feel safe because of Defendant's proximity and his hostile acts. Defendant was aware that his actions affected Deputy Castro; he testified that Deputy Castro was "shaking" during the encounter.

{39} Defendant also argues that Deputy Castro used excessive force when the deputy drew his gun a second time and pointed it at Defendant. After grabbing his license off the clipboard, Defendant began pacing back and forth between the truck and the patrol car. Defendant got back into the truck and then abruptly got out again. Defendant walked quickly and aggressively toward the deputy, at which point the deputy backed away, instructing Defendant to stay back. Deputy Castro testified that he attempted to control the situation by ordering Defendant to stay in one place, or come over to the deputy. Defendant, in response to the deputy's commands, stated, "You told me to come over here and then you tell me to stay there. That's your problem." During this time, both Defendant and Peppers were outside the truck. Deputy Castro ordered Defendant to stay by the tire of the truck; Defendant acknowledged Deputy Castro's order, but then stated that he was going to leave and return to Mann's house. Deputy Castro again ordered Defendant not to leave the scene, and again Defendant refused to comply. It was at some point during these very

**3.** Defendant seemed to believe that Deputy Castro's attempt to issue the citation was unlawful based on his opinion that an officer may not issue a ticket *simply for failure to wear a seatbelt*. Despite Defendant's mistaken belief about the laws of New Mexico, Defendant was not entitled to resist what appeared to him to be an unlawful arrest. Rather than resist arrest, even if the arrest is illegal, we have noted that because "[s]elf-help measures undertaken by a potential defendant who objects to the legality of the search can lead to violence and serious physical injury.... One can reasonably be asked to submit peaceably and take recourse in his legal remedies." *State v. Doe*, 92 N.M. 100, 102–03, 583 P.2d 464, 466–67 (1978) (citations omitted); *see also Commonwealth v. Moreira*, 388 Mass. 596, 447 N.E.2d 1224, 1227 (1983) ("In this era of constantly expanding legal ... rights ..., an arrestee may be reasonably required to submit to a possibly unlawful arrest and to take recourse in the legal processes available to restore his liberty."). When asked by defense counsel whether his actions were "the school-book solution," Defendant acknowledged that they were not.

chaotic moments that Deputy Castro pulled his gun and pointed it directly at Defendant. Defendant then drove away without Deputy Castro firing his weapon.

{40} While it is true that the underlying crime at issue in this appeal is relatively minor, a seatbelt violation, it is also clear that the encounter between the deputy and Defendant quickly escalated from a cooperative discussion to an outright, hostile refusal to obey the deputy's commands. Defendant refused to sign the citation, he repeatedly disobeyed the deputy's commands, he threatened the deputy, he actively resisted the deputy's attempts to regain control of the situation, he flaunted the deputy's authority, and ultimately left the scene. A review of the videotape reveals that, while Defendant did not actually harm Deputy Castro, his actions could have been perceived by Deputy Castro as threatening and hostile. In fact, Deputy Castro testified that he was afraid of Defendant, because Defendant was too close to him and that Defendant's aggressive behavior caused Deputy Castro to retreat. Defendant's own testimony reveals that Deputy Castro was shaking during the initial encounter, although Defendant denies that the deputy was shaking out of fear.

{41} Based on a review of the totality of the circumstances, we conclude that reasonable minds could not differ and that Deputy Castro used only reasonable and necessary force to protect himself given the "tense, uncertain, and rapidly evolving" circumstances with which he was faced.

*Graham,* 490 U.S. at 397, 109 S.Ct. 1865. Deputy Castro increased his use of force incrementally and in proportion to the circumstances with which he was confronted. Even assuming Deputy Castro twice drew his weapon during this first encounter, he did so only when provoked and in an effort to control the situation and to subdue a hostile, aggressive Defendant. No reasonable jury could conclude that Deputy Castro used excessive force under these circumstances. Thus, we have little difficulty concluding, as a matter of law, that Deputy Castro used an amount of force that was reasonably necessary given the circumstances with which he was faced. Accordingly, Defendant was not entitled to a self-defense instruction. And, the instruction Defendant received, though deficient, was "'more than he was entitled to.'"[4] *State v. Sutphin,* 2007–NMSC–045, ¶ 27, 142 N.M. 191, 164 P.3d 72 (quoting *State v. Heisler,* 58 N.M. 446, 452, 272 P.2d 660, 664 (1954)).

{42} We emphasize that an officer's use of a drawn weapon to effect an arrest is not always reasonable and nothing in this Opinion should be so construed. However, a review of several cases where courts have determined that the use of force was excessive or that the question should be resolved by the jury are readily distinguishable from the case before us. *See, e.g., Petta v. Rivera,* 143 F.3d 895, 897–98, 900 (5th Cir.1998) (per curiam) (holding that police officer's use of force was excessive when, after plaintiff re-

---

4. In the instant case, the district court fashioned a jury instruction that, in large part, reflects the reasoning set forth in this Opinion. The self-defense instruction contained in Jury Instruction No. 11 correctly stated that Defendant had no right to defend himself against the officer unless the officer used excessive force. The instruction further defined excessive force as "greater force than reasonably necessary to the performance of the duties of the officer." The instruction then set forth the requirements of a traditional self-defense claim, and concluded by properly placing the burden on the State.

Having reviewed the jury instruction crafted by the trial court in this case, as well as the existing jury instructions for self-defense, we conclude that we need a jury instruction specifically directed towards the limited right of self-defense against excessive force by a police officer. By means of this Opinion, we invite the Uniform Jury Instruction Criminal Committee to address this matter consistent with the views expressed in this Opinion. We suggest modifying the existing self-defense instructions for both non-deadly force and deadly force as follows:

Evidence has been presented that the defendant acted in self-defense. *A defendant has the right to defend himself against an officer if the officer used excessive force. Excessive force means greater force than reasonably necessary.*

The defendant acted in self-defense if:

*1. The officer used greater force than reasonable and necessary by (insert act of officer here) and;*

. . . .

The remaining elements of self-defense, as well as the paragraph placing the burden of proof on the State, should mirror the language currently contained in UJI 14–5181 (non-deadly force) and UJI 14–5183 (deadly force).

fused to exit the car after being pulled over for speeding, the officer "scream[ed] and curs[ed] her, tried to jerk her door open, ... attempted to smash her driver's side window with his nightstick, ... menaced her with his .357 Magnum handgun, [and allegedly] fired a shot at her car as she drove away," despite the fact that her two young children were in the car with her); *Sims*, 312 Ill.Dec. 753, 871 N.E.2d at 154–60 (holding that trial court erred when it refused defendant's self-defense instruction because jury could have found that the officers used excessive force when they pulled defendant out of the police car, shouted racial epithets at him, beat him while he was handcuffed, and then shackled his feet and returned him to the patrol car, where three officers continued to beat him and maced him in the eyes and mouth); *State v. Williams*, 367 S.C. 192, 624 S.E.2d 443, 444–46 (Ct.App.2005) (holding that trial court erred when it refused defendant's self-defense instruction because officer used excessive force when he drew his gun, threatened to kick in the defendant's door, and eventually "charged [at the defendant], tackled him, pressed his gun into his ribs, and threatened to kill him" in response to the defendant's unheeded attempts to cooperate with the officer).

## CONCLUSION

{43} We reverse the Court of Appeals and affirm Defendant's conviction and remand to the district court for further proceedings consistent with this Opinion.

{44} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and CHARLES W. DANIELS, Justices.