This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

　　Plaintiff-Appellee,

v.　　　　　　　　　　　　　　　　　　　　　　**No. A-1-CA-36780**

**ZACHARY CADENA,**

　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Zachary Cadena appeals his convictions for battery upon a peace officer, contrary to NMSA 1978, Section 30-22-24 (1971), and resisting, evading, or obstructing an officer, contrary to NMSA 1978, Section 30-22-1 (1981), arguing that the district court erred in denying his request for a self-defense jury instruction. We affirm.

### BACKGROUND

**{2}**     This case arises from a physical altercation that ensued between Defendant and Deputy Brandon Switzer on a dark night in September 2015. At trial, the State introduced a dash camera video and Deputy Switzer's testimony, which established the following facts.

**{3}**     Deputy Switzer was dispatched to a residence in the small community of Chamberino, New Mexico in response to complaints of a "disorderly subject, a drunken, intoxicated person." According to dispatch, the suspect was described as wearing black shorts and no shirt. As Deputy Switzer looked for the suspect, he noticed Defendant, who matched the description from the dispatch, walking on an otherwise unoccupied road.

**{4}**     Deputy Switzer stopped and got out of his patrol vehicle, identified himself, and told Defendant that he needed to speak with him. Defendant continued walking and yelled profanities at Deputy Switzer. After a few more failed attempts at speaking with Defendant, Deputy Switzer turned his patrol vehicle around so that it was facing Defendant. Deputy Switzer again got out of his vehicle and began speaking with Defendant. At this point, Deputy Switzer's dash camera video began recording. The video captured much of the initial encounter between Deputy Switzer and Defendant but did not capture the entirety of the altercation that followed.

**{5}**     Deputy Switzer asked Defendant his name and Defendant responded, "You ain't gotta worry about my name homie." Defendant refused to provide his name after being asked a second time. Deputy Switzer told Defendant he could be arrested for concealing his identity to which Defendant responded, "I can resist you for assaulting me." Defendant continued to yell at the deputy and exhibited what Deputy Switzer described as "pre-attack indicators"—flailing his hands, clenching his jaw, hitting his hands, swaying around, and altogether failing to comply with Deputy Switzer's commands.

**{6}**     Defendant repeatedly failed to comply with Deputy Switzer's requests for Defendant to stop raising his hands at him. Despite Deputy Switzer's attempts to deescalate the situation, Defendant continued displaying pre-attack indicators. As a result, Deputy Switzer attempted to detain Defendant because he felt threatened, he feared he would "receive an immediate battery[,]" and he believed Defendant had concealed his identity in violation of the law. Deputy Switzer was also uncertain as to whether Defendant had any weapons.

**{7}**     In an effort to handcuff Defendant, the deputy asked Defendant to turn around several times, but Defendant did not comply. Deputy Switzer explained, "At that point I reached out and grabbed [Defendant's] left arm to put a hand restraint on him and gave him the opportunity to turn around. At which point he leaned back against my vehicle and refused to do so." When Deputy Switzer told Defendant to "turn around," Defendant responded, "I'll take you to ride, homie." Deputy Switzer then attempted a "cuff throw," which he described as pulling a suspect "with [his] left hand and . . . . with [his] right arm [attempting] to bring [the suspect] to the ground so [he could] successfully put restraints

on [the suspect]." Deputy Switzer, realizing that his verbal skills were not working and "[feeling] like [he] was going to receive an immediate battery[,]" tried to make a "ten-code" call—a dispatch for an officer in distress. However, the call never went through.

**{8}**   The two then slid off the hood of the vehicle and ended up on the ground. Deputy Switzer used his forearm to hit Defendant somewhere near his back. The two got to their feet and Deputy Switzer again called for officer in distress. Defendant, who still had handcuffs on his left wrist, advanced towards Deputy Switzer attempting to punch him. Deputy Switzer was afraid Defendant might use the handcuffs as a weapon and although he successfully blocked a number of punches, Defendant eventually struck Deputy Switzer in the eye and ear. Deputy Switzer was then able to strike Defendant two to four times and kneed him in the upper torso, at which point Defendant stumbled back towards the deputy's vehicle. The scuffle briefly continued until Deputy Switzer gained some distance from Defendant and was able to deploy his Taser, effectively ending the altercation.

**{9}**   At the close of evidence, Defendant requested a self-defense jury instruction, which the district court denied. The jury found Defendant guilty of battery on a peace officer and resisting, evading or obstructing an officer. Defendant now appeals.

## DISCUSSION

**{10}**   The issue before us is whether there was sufficient evidence to instruct the jury on self-defense. Defendant argues he was entitled to the instruction because Deputy Switzer initiated the altercation, and, therefore, reasonable minds could differ over whether Deputy Switzer used excessive force. The State contends the only force used was necessary force, and, consequently, the district court properly denied Defendant's request for a self-defense jury instruction. For the reasons that follow, we agree with the State.

**{11}**   We review the district court's denial of Defendant's requested self-defense jury instruction for reversible error. *State v. Ellis*, 2008-NMSC-032, ¶ 14, 144 N.M. 253, 186 P.3d 245. "The propriety of jury instructions given or denied is a mixed question of law and fact," which we review de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "We view the evidence in the light most favorable to giving the requested instruction." *State v. Hill*, 2001-NMCA-094, ¶ 5, 131 N.M. 195, 34 P.3d 139. "When there is evidence to support a finding of every element of a defense, an instruction on that defense is required." *State v. Emmons*, 2007-NMCA-082, ¶ 7.

**{12}**   For Defendant to be entitled to a self-defense jury instruction there must have been evidence presented at trial that:

> 1.   The officer used greater force than reasonable and necessary . . . ; and

2.    There was an appearance of immediate danger of bodily harm to the defendant as a result of [the officer's use of force]; and

3.    The defendant was in fact put in fear of immediate bodily harm and [the defendant battered the officer] because of that fear; and

4.    The defendant used an amount of force that the defendant believed was reasonable and necessary to prevent the bodily harm; and

. . . .

6.    The apparent danger would have caused a reasonable person in the same circumstances to act as the defendant did.

UJI 14-5185 NMRA. The basis for Defendant's proposed jury instruction was that the deputy used excessive force by "twisting [D]efendant's arm, throwing [D]efendant on the ground, punching [D]efendant in the face, striking [D]efendant with his knee, and shooting [D]efendant with a Taser[,]" and, as a result, "[D]efendant was in fact put in fear of immediate bodily harm and struck [Deputy] Switzer in the face because of that fear[.]" We note that Defendant's requested instruction was not limited to the alleged force Deputy Switzer used before Defendant punched the deputy in the eye and ear. Instead, Defendant alleged facts that occurred after he hit Deputy Switzer—i.e., punching Defendant in the face, striking Defendant with his knee, and shooting Defendant with a Taser. To the extent Defendant's requested self-defense instruction is based on facts that occurred *after* he struck the deputy, we do not consider them. *See* UJI 14-5185 NMRA (requiring that prior to the defendant using force he or she "was in fact put in fear of immediate bodily harm" because of the officer's conduct). Thus, we limit our analysis to Deputy Switzer's use of force prior to Defendant hitting the deputy.

**{13}** *State v. Ellis* is instructive. In that case, our Supreme Court held that, as a matter of law, the defendant was not entitled to a self-defense jury instruction even though the deputy had pointed a gun at the defendant after the defendant continually defied the deputy's commands, "threatened the deputy, he actively resisted the deputy's attempts to regain control of the situation, [and] flaunted the deputy's authority[.]" 2008-NMSC-032, ¶ 40. The Court recognized that the underlying crime, a seatbelt violation, was minor, but concluded, "it is . . . clear that the encounter between the deputy and [the d]efendant quickly escalated from a cooperative discussion to an outright, hostile refusal to obey the deputy's commands." *Id.* However, because the deputy "increased his use of force incrementally and in proportion to the circumstances with which he was confronted[,]" the Court reasoned that as a matter of law "reasonable minds could not differ" that the deputy only used necessary force to protect himself. *Id.* ¶ 41.

**{14}** In sum, *Ellis* instructs that a defendant only has a limited right to defend himself against an officer and may only assert self-defense when the officer's use of force during the encounter is unreasonable. *See id.* ¶¶ 15-16. A defendant cannot assert self-defense when an officer used "necessary force to overcome resistance to an arrest, or

[used] proper force to prevent an escape[.]" *State v. Kraul*, 1977-NMCA-032, ¶ 26, 90 N.M. 314 (internal quotation marks and citation omitted). "[T]he police officer's privilege of using *necessary* force implies that the necessity of the force should be measured from the perspective of an objectively reasonable officer and not from what an arrestee might think would be reasonable." *Ellis*, 2008-NMSC-032, ¶ 24.

**{15}** Ultimately, we "must determine whether, under the evidence presented, reasonable minds could differ with respect to whether [Deputy Switzer] used excessive force." *Id.* ¶ 17. If we conclude "that reasonable minds could differ," then Defendant was entitled to a self-defense jury instruction. *Id.* However, if we conclude "that reasonable minds could not find that [Deputy Switzer] used excessive force, the matter ends there," and, as a matter of law, Defendant was not entitled to have the jury instructed on self-defense. *Id.* While we agree with Defendant that he was not required to testify to establish that he was entitled to an instruction, there nevertheless needed to be some evidence in the record sufficient to allow reasonable minds to differ as to all elements of the defense. *See State v. Lopez*, 2000-NMSC-003, ¶ 23, 128 N.M. 410, 993 P.2d 727 ("[A] self[-]defense instruction is required whenever a defendant presents evidence sufficient to allow reasonable minds to differ as to all elements of the defense." (internal quotation marks and citation omitted)); *see also State v. Romero*, 2005-NMCA-060, ¶ 8, 137 N.M. 456, 112 P.3d 1113 ("In the case of self-defense, there must be some evidence, even if slight, to support the defense.").

**{16}** Similar to the deputy in *Ellis*, who drew his weapon on a non-compliant suspect, Deputy Switzer used force "in an effort to control the situation and to subdue a hostile, aggressive [d]efendant." *Ellis*, 2008-NMSC-032, ¶ 41. Here, the situation escalated because Defendant was non-compliant and continually displayed what was described as pre-attack indicators. Defendant was angry, yelling, pointing at Deputy Switzer, swaying, flailing his arms, clinching his jaw, and repeatedly disobeying the deputy's commands. Notwithstanding Deputy Switzer's repeated attempts to deescalate the situation with verbal commands, Defendant remained non-compliant. Only then did Deputy Switzer grab Defendant's arm and ultimately force him to the ground while struggling to handcuff him. And moments later, Deputy Switzer hit Defendant on the back but only after grappling with Defendant and being pushed into his patrol vehicle.

**{17}** Deputy Switzer was alone with Defendant at night, unaware of whether Defendant possessed any weapons, and in fear Defendant would batter him. Moreover, immediately before Deputy Switzer detained Defendant, Defendant threatened the deputy by stating "I'll take you to ride, homie." Given the circumstances and viewing them "from the perspective of an objectively reasonable officer[,]" we cannot say that Deputy Switzer's forcing Defendant to the ground and hitting Defendant in the back in an effort to handcuff him was excessive force. *Id.* ¶ 24.

**{18}** Defendant was being investigated for a relatively minor charge, but nonetheless, Defendant "repeatedly disobeyed the deputy's commands, he threatened the deputy, he actively resisted the deputy's attempts to regain control of the situation, [and] he flaunted the deputy's authority[.]" *Id.* ¶ 40. Based on the evidence before us, reasonable

minds could not differ with respect to whether Deputy Switzer used excessive force. Thus, we hold, as a matter of law, Defendant was not entitled to a self-defense jury instruction.

**CONCLUSION**

**{19}** For the foregoing reasons, we affirm Defendant's convictions for battery upon a peace officer and resisting, evading, or obstructing an officer.

**{20}  IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JENNIFER L. ATTREP, Judge**